# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

GARY GILLARD,

                                           Plaintiff,

    v.

DEBORAH L. JARVIS,                               9:11-CV-1021
THOMAS LAVALLEY,                               (LEK/ATB)
THERESA KNAPP-DAVID,
BRIAN FISCHER; ROGER KINSEY,

                                          Defendants.

GARY GILLARD, Plaintiff, *pro se*
KRISTEN M. QUARESIMO, AAG, for the Defendants

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

## REPORT and RECOMMENDATION

This matter was referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Lawrence E. Kahn, Senior United States District Judge.

In his civil rights complaint, plaintiff alleges that defendants have violated many of plaintiff's constitutional rights in connection with the handling of his legal papers and have failed to protect him from assault by another inmate in violation of his Eighth and Fourteenth Amendment rights. (Compl.) (Dkt. No. 1). Plaintiff seeks injunctive as well as substantial monetary relief. (Compl. at pp.7-8).

Presently before the court is defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 23). Plaintiff has responded in opposition to the defendants' motion, and defendants filed a reply. (Dkt. Nos. 29, 30).

For the following reasons, this court agrees with defendants and will recommend dismissal of the complaint in its entirety.

## DISCUSSION

### I. BACKGROUND

Some of the facts stated in this complaint relate to a separate action filed by plaintiff in 2009. *Gillard v. Rovelli*, No. 9:09-CV-860 (NAM/TWD)[1] ("*Rovelli*"). Plaintiff states that in *Rovelli*, he named Inmate Eric Perez as a defendant. Mr. Perez has appeared in *Rovelli* by filing an answer as well as by filing other documents during the course of the action.

Generally inmates are not allowed to correspond with each other for security reasons. Department of Corrections and Community Supervision ("DOCCS") Directive No. 4422. In order to be able to correspond with Mr. Perez for purposes of *Rovelli*, plaintiff filed an Article 78 proceeding in Albany County Court. (Compl. ¶ 11). Assistant Attorney General ("AAG") Kinsey, counsel for the DOCCS defendants in *Rovelli*, filed a letter with the court, requesting that Magistrate Judge Lowe sign an order, allowing plaintiff to correspond with Mr. Perez for purposes of the law suit. (Dkt. No. 65 in *Rovelli*). Magistrate Judge Lowe signed the order on May 13, 2010. (Dkt. No. 67 in *Rovelli*). As a result of Magistrate Judge Lowe's order, the New York State Article 78 proceeding was denied as moot because plaintiff received the relief that he was requesting in that action. (Compl. ¶ 13).

---

[1] *Rovelli* was originally assigned to District Judge Norman A. Mordue and Magistrate Judge George H. Lowe, but was reassigned to Magistrate Judge Thérèse Wiley-Dancks after Magistrate Judge Lowe's retirement. (Dkt. No. 123).

In this complaint, plaintiff alleges that he has sent motions, papers, and a video tape to Mr. Perez, but that he has not responded to any correspondence. (Compl. ¶ 14). Plaintiff claims that AAG Kinsey filed a letter in response to a motion to compel in *Rovelli*, falsely stated that Mr. Perez was no longer a defendant in *Rovelli*. Plaintiff alleges that AAG Kinsey somehow "ordered" that all correspondence between plaintiff and Mr. Perez be "pulled" in order to protect his clients in *Rovelli*. (Compl. ¶ 16).

Plaintiff then alleges that on July 28, 2011, defendant Jarvis wrote to plaintiff, accusing plaintiff of attempting to circumvent correspondence procedures and threatening plaintiff with a misbehavior report if he attempted to communicate with Mr. Perez. (Compl. ¶ 18). Plaintiff claims that he attempted to send another motion to Mr. Perez on August 7, 2011, but it was "rejected" and returned to him as "unauthorized correspondence." (Compl. ¶ 19). Plaintiff concludes that defendants Jarvis and Kinsey deliberately prevented plaintiff from sending documents to Mr. Perez, causing plaintiff "to not be able to defend," and they have "prejucice[d] the plaintiff as well as defendant Perez violating the First, Eighth, Ninth Amendments and Fourteenth Amendment Due Process and Equal Protection . . . ." (Compl. ¶ 20).

Plaintiff also alleges that on July 1, 2010, he was "court ordered" to Washington County Court. (Compl. ¶ 21). Plaintiff claims that he was sent to Clinton Correctional Facility, where he was attacked for the fourth time by an "unknown inmate," and he was placed into Involuntary Protective Custody "after 28 days" because Mr. Perez was "spotted in the mess hall." (*Id.*) Plaintiff claims that defendants Fischer, Knapp-

3

David, and Thomas LaValley disregarded a serious risk of harm to plaintiff when they had him transferred to Clinton. (Compl. ¶¶ 22-23). Thus, they failed to protect him in violation of his constitutional rights, breaching their duties, and failing to follow their own policies and procedures. (Compl. ¶ 27).

Plaintiff states that defendant Knapp-David is in charge of "movement and control" for all DOCCS facilities, and she failed to properly review all plaintiff's "known enemies" to ensure that he would be safe after his transfer to Clinton. (Compl. 23). Plaintiff alleges that defendant LaValley, the superintendent of Clinton, failed to check plaintiff's "enemy list," and improperly allowed plaintiff to be placed in General Population. (Compl. ¶ 25). Finally, plaintiff claims that defendant Fischer, the Commissioner of DOCCS, has failed "to protect the plaintiff and has allowed the plaintiff to be cut by an inmate, has allowed the plaintiff to be assaulted three times by inmates who were aiding correctional officers . . . ."[2] (Compl. ¶ 26).

## II. **Motion to Dismiss**

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing

---

[2] In this paragraph, plaintiff also seems to claim that the refusal to protect plaintiff from assault was related to plaintiff's attempts to seek "relief from continued assaults, beatings, theft of property and vigilante gang assaults by staff . . . based on [the] crime of conviction . . . ." (Compl. ¶ 26). It is unclear whether plaintiff is attempting to raise some sort of retaliation claim, related to his attempt to seek relief in *Rovelli*.

4

*Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits and any statements or documents incorporated into the complaint by reference. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the proceeding to one for summary judgment).

In this case, defendants have attached exhibits to their motion to dismiss. (Def.s' Exs. A-C). The exhibits are documents associated with *Rovelli*, including the *Rovelli* docket sheet (Ex. A), a letter from defense counsel in *Rovelli* (Ex. B), and a document filed by plaintiff in *Rovelli* (Ex. C). These are all court documents of which

5

this court may take judicial notice and that are integral to the complaint in this action. Thus, the court may consider these exhibits in deciding this motion to dismiss without converting it into a motion for summary judgment.

## III. ELEVENTH AMENDMENT

### A. Legal Standards

The state itself cannot be sued under section 1983. *Komlosi v. New York State OMRDD*, 64 F.3d 810, 815 (2d Cir. 1995) (citing *Will v. Michigan Department of Police*, 491 U.S. 58, 71 (1989)). This is true whether the court is considering Eleventh Amendment immunity or a statutory interpretation of section 1983. *Id.* at 815 n.3. An action against state officers in their official capacities is tantamount to an action against the state. *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 87 & n.1 (2d Cir. 1991) (citations omitted).

### B. Application

In his complaint, plaintiff states that he is suing all the defendants in their individual and "official" capacities. To the extent that plaintiff is requesting damages, none of the defendants may be named in their official capacities. Thus, any damage claims may be dismissed against all defendants in their official capacities.

## IV. ACCESS TO COURTS

### A. Legal Standards

It is well-settled that inmates have a constitutional right to "meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 823 (1977). The Supreme Court held in *Bounds* that "the fundamental constitutional right of access to the courts requires

prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. The Supreme Court later clarified that "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). The *Lewis* court explained, "the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.*

"Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995). In addition, "to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008).

### B. Application

In this case, plaintiff claims that defendants Jarvis (the inmate records coordinator for Clinton Correctional Facility) and Kinsey (AAG in *Rovelli*) conspired to deny plaintiff the ability to correspond with inmate Perez because plaintiff had trouble sending Perez the summary judgment motion and the DVD/video in *Rovelli*.

7

Plaintiff claims that defendant Jarvis sent plaintiff a letter, accusing him of attempting to "circumvent" correspondence procedures by sending materials to Perez and threatened plaintiff with disciplinary action. (Compl. ¶¶ 14-20). Plaintiff claims that defendant Kinsey participated in the denial of correspondence, in violation of Judge Lowe's order, so that AAG Kinsey could "protect his clients . . . who had hired Perez for a contract hit against the plaintiff." (Compl. ¶ 16).

Regardless of what actually happened to the documents sent by plaintiff, he cannot show that he suffered any "actual injury." The following discussion shows that plaintiff has suffered no actual injury as the result of either defendant's conduct. A review of the docket sheet in *Rovelli* shows that on May 10, 2010, AAG Kinsey requested that Judge Lowe sign an order allowing plaintiff to correspond with inmate Perez for purposes of *Rovelli*. (Ex. A; Dkt. No. 65). Judge Lowe signed the order on May 13, 2010. (Ex. A; Dkt. No. 67). Plaintiff wrote a letter asking that inmate Perez be given the right to respond to all motions. (Ex. A; Dkt. No. 76). On September 29, 2010, Judge Lowe recommended that a motion to dismiss, filed by the State defendants (all defendants except inmate Perez), be granted in part and denied in part. (Ex. A; Dkt. No. 82). Inmate Perez responded to the motion to dismiss, thus, he clearly had the document. (Ex. A; Dkt. No. 80). The recommendation was approved on November 24, 2010. (Ex. A; Dkt. No. 84).

On June 3, 2011, plaintiff filed a motion for summary judgment against defendant Perez. (Ex. A; Dkt. No. 95). Docket Number 94 in *Rovelli* is the DVD/video, listed as Exhibit 5 to plaintiff's motion for summary judgment against

8

Inmate Perez. On June 13, 2011, Judge Lowe issued a TEXT ORDER, stating that it was "unclear" whether inmate Perez received the DVD/video, and stated that inmate Perez should notify the court if he had not received the exhibit. (Ex. A; Text Order dated 6/13/11). On June 27, 2011, inmate Perez advised the court that he had not received the DVD exhibit. (Ex. A; Dkt. No. 98). Judge Lowe also ordered plaintiff to inform the court if he served the exhibit on inmate Perez. (Ex. A; Text Order dated July 6, 2011). As a result, Judge Lowe reset all the deadlines for the plaintiff's summary judgment motion. (*Id.*)

Instead of responding to Judge Lowe's question, plaintiff filed a letter on July 15, 2011, complaining about AAG Kinsey's failure to respond to plaintiff's motion to compel information about inmate Perez's disciplinary history. (Ex. A; Dkt. No. 99). The next few docket entries focused on the plaintiff's motion to compel. (Ex. A; Dkt. Nos. 102-104). On August 5, 2011, plaintiff filed what he labeled a "reply" to his motion for summary judgment, but in the document, he complained about inmate Perez's failure to respond to plaintiff's motion for summary judgment and complained that the court was helping inmate Perez, but not helping the plaintiff. (Ex. A; Dkt. No. 107). Inmate Perez ultimately responded to the plaintiff's motion for summary judgment on August 10, 2011, even though it appears that he did not receive a copy of the DVD/video. (Ex. A; Dkt. No. 109).

Plaintiff had also requested other documents from the state officials regarding inmate Perez, and after defense counsel resisted producing the documents, plaintiff later requested the documents directly from Perez. (Ex. A; Dkt. Nos. 96, 102, 116).

9

Inmate Perez ultimately responded that he did not possess these documents. (Ex. A; Dkt. Nos. 119). After plaintiff moved to recuse Judge Lowe (Ex. A; Dkt. No. 120), on January 24, 2012, plaintiff complained that the court was helping inmate Perez by sending him documents. (Ex. A; Dkt. No. 121). Judge Lowe denied the motion to recuse, and recommended denying plaintiff's motion for summary judgment against inmate Perez. (Ex. A; Dkt. No. 122). Plaintiff objected, but on March 20, 2012, Judge Mordue adopted the recommendation and denied the motion. (Ex. A; Dkt. Nos. 125, 126).

In Magistrate Judge Lowe's recommendation, he stated that he reviewed the video that was submitted by plaintiff. (Dkt. No. 122 in *Rovelli* at 4). Judge Lowe found that the video was "simply not clear enough to make any ruling as a matter of law regarding precisely what transpired." (*Id.*) Even assuming that plaintiff was prevented from sending documents/exhibits to inmate Perez, there is no indication that plaintiff suffered actual injury as a result. Inmate Perez clearly had the motion for summary judgment because he responded to the motion and argued that he was not "hired" by defendants to hurt plaintiff. Whether inmate Perez had the video or saw the video would not have made a difference to the outcome since the court was able to consider Perez's arguments and see the video.

Plaintiff argues that the failure to be able to correspond with Perez "caused the plaintiff to not be able to defend." (Compl. ¶ 20). However, plaintiff was not "defending" the action, he brought the action and made the summary judgment motion. The only person who might have been injured based on his inability to see

10

the video was Perez himself. The court was able to view the video upon which plaintiff's argument was based. Whether inmate *Perez* was injured by the lack of access to the exhibit has absolutely *no bearing* on plaintiff's claim. Plaintiff cannot assert the rights of others, and whether Judge Lowe's order was violated by defendant Jarvis or defendant Kinsey would not change this court's finding. *See Berrios v. New York City Housing Auth.*, 564 F.3d 130, 132-33 (2d Cir. 2009) (pro se plaintiff may not assert the rights of others); *Camacho v. Brandon*, 317 F.3d 153, 159 (2d Cir. 2003) (plaintiff has no standing to assert the rights of others, unless certain factors exist). The place to assert a violation of Judge Lowe's order, where it could have been remedied, was in *Rovelli* itself, not in a separate action.

The court would also point out that after the case was reassigned to Magistrate Judge Dancks, she held a discovery conference and ordered plaintiff to be provided with some of the documents that he sought from defendants. (*Rovelli* Dkt. No. 130, 135). Plaintiff has another motion for summary judgment pending. (*Rovelli* Dkt. No. 137). Defendants filed a motion for summary judgment. (*Rovelli* Dkt. No. 140). Plaintiff filed a motion for sanctions and a motion for injunctive relief in *Rovelli*. (*Rovelli* Dkt. No. 144, 151). Plaintiff cannot show that any conduct by defendant Jarvis or defendant Kinsey caused plaintiff "actual injury" in a pending action.[3]

---

[3] Plaintiff seems to take issue with the way that his case has been handled by the court and by defense counsel. Plaintiff complains that he "lost" his Article 78 proceeding because defendant Kinsey asked Judge Lowe to allow plaintiff to communicate with inmate Perez. The Article 78 proceeding was dismissed as "moot" because plaintiff obtained the relief he sought. Plaintiff complains because the court is "helping" defendant Perez. However, the court was simply making sure that defendant Perez was served with the appropriate motions regardless of whether plaintiff was able to send them to the defendant for one reason or another. Plaintiff fails to understand that he is

11

In his response to the motion to dismiss, plaintiff alleges that defendant Kinsey "stated that the inmate defendant was no longer a defendant and had informed defendant Jarvis to stop all correspondence between the plaintiff and defendant Eric Perez. (Dkt. No 29 at ¶ 4). Plaintiff does not point to any specific document, and this court has found no document, in which defendant Kinsey allegedly made this clearly inaccurate statement. Plaintiff claims that deliberately denying mail to inmate Perez on two occasions affected the "outcome" of that case. Since *Rovelli* is still pending, plaintiff cannot show that defendants' alleged actions affected the outcome of the case. Inmate Perez responded to the summary judgment motion, denying plaintiff's allegations, and the court was able to view the video tape. Nothing that defendants are alleged to have done affected any part of *Rovelli*. Thus, the complaint may be dismissed as against defendants Kinsey[4] and Jarvis.

## V. FAILURE TO PROTECT

### A. Legal Standards

An inmate has a right under the Eighth and Fourteenth Amendments to be spared "the 'unnecessary and wanton infliction of pain.'" *Hendricks v. Coughlin*, 942 F.2d 109, 112 (2d Cir. 1991) (citation omitted). An inmate's allegation that a defendant was deliberately indifferent in failing to protect him from the violence of

---

being afforded liberality, and that he brought this civil action. Inmate Perez was an unwilling defendant in the action and is getting no more "liberal" treatment than plaintiff himself.

[4] In addition, defendant Kinsey would be entitled to absolute immunity for any actions taken that were intimately associated with judicial proceedings in which he acting as an advocate for the State. *Scott v. Djeck*, No. 5:09-CV-1122, 2010 WL 145297, at *7 (N.D.N.Y. Jan. 11, 2010); *Cohen v. Bane*, 853 F. Supp. 620, 627 (E.D.N.Y. 1994).

other inmates states a claim under section 1983. *Id.* at 113.

In order to state an Eighth Amendment claim for failure to protect an inmate, the plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm, ***and*** prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that prison officials ***actually knew of and disregarded*** an excessive risk of harm to the inmate's health and safety. *Id.* at 837. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. *Id.*

**B.     Application**

In his complaint, plaintiff states that he was "court ordered" to appear in Washington County Court. (Compl. ¶ 21). Plaintiff states that as a result of the court order, he was "packed up" and sent to Clinton Correctional Facility, where he was "attacked for the fourth time by [an] unknown inmate and placed into involuntary protective custody after 28 days when defendant Eric Perez . . . was spotted in [the] mess hall." (*Id.*) Although plaintiff attempts to hold defendants Brian Fischer, Theresa Knapp-David and Thomas LaValley responsible for failure to protect him from this assault, there is absolutely no indication that any of the three defendants knew of and disregarded a serious risk to plaintiff's safety. Plaintiff states that his transfer was a "deliberate attempt" to have him assaulted again. However, plaintiff states that he was court-ordered to appear in Washington County. Defendants did not choose to transfer him. Plaintiff also states that he was attacked from the back by an

13

"unknown inmate" and claims that he did not know, nor did he ever have any "words" with this individual before the alleged attack. (Compl. ¶ 28).

If plaintiff did not know the inmate who assaulted him, he cannot claim that defendants "knew" and disregarded the serious risk that plaintiff would be assaulted at Clinton by this unknown individual. The fact that inmate Perez was spotted in the mess hall 28 days later is *completely irrelevant*. Plaintiff does not allege that he was assaulted by inmate Perez, and in fact, plaintiff states that he was placed in involuntary protective custody after inmate Perez was spotted and before plaintiff and Perez had any altercation.

In his response, plaintiff seems to claim that because of the "nature of his conviction," defendants were required to give his location "serious attention." (Dkt. No. 29, ¶ 15). There is still no indication that any of the named supervisory defendants knew of and disregarded a substantial risk to plaintiff. The general risk that plaintiff encounters due to the nature of his conviction is the same as other prisoners who share the same type of convictions. The law is not based on knowledge of a "general risk." *See Hogan v. Fischer*, No. 09-CV-6225, 2012 WL 4845609, at *6 (W.D.N.Y. Oct. 10, 2012) (failure to protect against a general threat of harm is insufficient) (citing *Coronado v. Goord*, No. 99 Civ. 1674, 2000 WL 1372834 (S.D.N.Y. Sept. 25, 2000)). Thus, plaintiff does not state a claim for failure to protect against defendants Fischer, Knapp-David, and LaValley.[5]

---

[5] Because this is a motion to dismiss, this court has assumed the truth of plaintiff's facts. However, it is unclear when plaintiff was at Clinton Correctional Facility during the time that he claims he states that he was transferred there to be assaulted. Plaintiff states that he was sent to

## VI. PERSONAL INVOLVEMENT

### A. Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). A supervisory official is personally involved if that official directly participated in the infraction. *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986). The defendant may have been personally involved if he or she failed to remedy the wrong after learning about it through a report or appeal; if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue, or if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, 556 U.S. 662 (2009).

The failure of a supervisory official to investigate a letter of protest written by an inmate is insufficient to establish personal involvement. *Smart v. Goord*, 441 F.

---

Clinton on July 1, 2010, but that does not appear to be true, and he never states when he was allegedly assaulted by the unknown inmate. Inmate Perez was at Clinton all along. (*See Rovelli* Dkt. No. 76) (plaintiff served Perez at Clinton with a letter-motion). The docket sheet in *Rovelli* indicates that on June 28, 2010, plaintiff was at Attica Correctional Facility when he filed his response to defendants' motion to dismiss and a cross motion for summary judgment. (*Rovelli*, Dkt. No. 72). There were no changes of address filed by plaintiff, and it appears that plaintiff was still in Attica on July 20, 2010 when the court sent him a Text Notice. (*Rovelli*, Dkt. Sheet Text Notice, dated 7/20/10). Plaintiff was still at Attica when he filed his letter-motion requesting that inmate Perez be given the right to respond to all motions. (*Rovelli* Dkt. No. 76). He was still at Attica on August 13, 2010, when this court sent him a Text Order. (*Rovelli*, Text Order dated August 13, 2010).

15

Supp. 2d 631, 642–643 (S.D.N.Y. 2006). Mere notice of alleged wrongdoing is insufficient to establish a supervisor's or administrator'[s] personal involvement. *Gibson v. Comm'r of Mental Health*, No. 04 Civ. 4350, 2008 WL 4276208, at *8, 2008 U.S. Dist. LEXIS 70080, at *27 (S.D.N.Y. Sept. 17, 2008). While mere receipt of a letter from a prisoner is insufficient to establish individual liability . . . '[p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint.'" *Boddie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (quoting *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).

**B. Application**

Defendants also argue that plaintiff has failed to allege sufficient personal involvement of these supervisory defendants. Although it is not necessary to this court's decision, defendants are correct in their argument, and this is another basis for dismissal of the action against these three supervisory defendants. Brian Fischer is the Commissioner of DOCCS, and there is no indication that he is involved in the transfer of every inmate. Although defendant Knapp-David is in charge of classification and movement, plaintiff only asserts her involvement in the most conclusory terms. Finally, defendant LaValley is the superintendent of the receiving facility, and would not be personally involved in every inmate's transfer into his facility.

Plaintiff claims that the supervisory defendants were "continuously informed," and did nothing but return the complaints to the facility from which they originated. As stated above, the fact that supervisory officials sent and inmate's letters of

16

complaint to subordinates for review and investigation does not establish the supervisor's personal involvement. Thus, the lack of personal involvement is an alternative basis for dismissal against the three supervisory defendants.

## VII. <u>MISCELLANEOUS STATEMENTS BY PLAINTIFF</u>

The court notes that in plaintiff's response, he quotes from defendants' papers and attempts to refute the arguments that defendants make claiming that they have misunderstood and misquoted his complaint. (Dkt. No. 29). Within plaintiff's arguments, he seems to discuss matters that are pending in *Rovelli*. Plaintiff states that, in stating the background facts in this case, defense counsel has misstated plaintiff's claims in *Rovelli*. (Dkt. No. 29 ¶ 15). Plaintiff states that in *Rovelli*, he is alleging that the officers wanted to beat plaintiff for filing grievances so they identified plaintiff as a sex offender to other inmates, like inmate Perez, who would then "help" defendants in *Rovelli* assault plaintiff. (*Id.*) Plaintiff then states that "the defendants" refused to file criminal charges "upon request," allowing these criminal acts to go unpunished. (*Id.*) The court interprets these statements as plaintiff's attempt to state that the defendants in this case are misquoting his claim in this action and in *Rovelli*. These assertions about defendants refusing to file criminal charges "upon request" are not in this complaint and are not relevant to this action. To the extent that plaintiff is attempting to raise or discuss issues that are not pending in this action, the court declines to discuss them.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 23) be

17

**GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY AGAINST ALL DEFENDANTS.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 6, 2012

Hon. Andrew T. Baxter
U.S. Magistrate Judge